In the name of the Father, and of the Son, and of the Holy Ghost. Amen. The final case on our docket this morning is 23-20026, Gemini Insurance Company v. Indemnity Insurance Company of North America. Mr. Reimer. Thank you, Your Honor. This is a case on the Indemnity OSIP policy, which is an owner-controlled insurance policy, and the district court erred when it did that. The very simple answer is there is something called the Voluntary Compensation and Employment Liability Endorsement. I call it the V-cell endorsement that clearly intended to provide coverage for this precise situation. And despite the exact and precise language in that V-cell endorsement, the district court found that there was no coverage under the Indemnity policy. It's important to understand first that in the contract between Bechtel and Echo, the general contractor and the subcontractor, this insurance was specifically required. It specifically, in the record of 2781, that the OSIP policy was intended by contract to provide primary coverage for employee injuries to contractors of all tiers. That was the intent that was there for the Indemnity policy. The Indemnity policy specifically references the OSIP, so it's not one of those situations where Indemnity can say, we don't care what the underlying contract says, we weren't aware that there was an OSIP. They wrote their policy to provide coverage specifically for that OSIP, and they referenced the OSIP in their policy. And so that's a very significant issue. And so I want to turn to the language of the contract first, and that's record at 2781, where it says specifically that the owner has an effect, an owner-controlled insurance program, or an OSIP, which provides workers' comp and employers' liability coverage covering contractor and any or all of contractors' subcontractors of all tiers. And then it says, and I think this is important, for injuries in the course and scope of their employment for the project. It doesn't say course and scope of employment for the general contractor. It says course and scope of employment for the project. And so then the record at 1374 and 1375, Indemnity specifically acknowledges the requirements of the OSIP. And so this OSIP coverage for workers' comp and employers' liability coverage for employees of subcontractors was specifically provided by the VSAIL endorsement. And there's two different places in the record you can find that, so to avoid any confusion, it's the record at 1367 and 68 and 962 and 963. And this endorsement is intended to provide coverage for bodily injury to subcontractor employees. In other words, it's intended to mirror the Texas requirements of statutory employment, where when somebody's injured, whether it's the general contractor's employee or a sub, or a sub of a sub, that everybody is protected from that liability. This was an exception where Ms. Espinoza was killed so she could bring a gross negligence claim against her employer, Echo, and also bring claims against the general contractor, Bechtel. So if we look at the VSAIL endorsement, it clearly intends to add coverage to what is a typical employers' liability policy, or a Part 2 of a workers' comp policy. And it specifically says, and this is the record at 1368, it specifically says that Part 2, employers' liability insurance applies to bodily injury covered by this endorsement. And so it is saying, if you are covered by this endorsement, then Part 2, or the employers' liability part, applies to that injury and protects the insured. The insured here, obviously, is Bechtel. And then it says the endorsement changes the policy to which is attached and effective on the date issued, unless otherwise stated. Now, the district court found significance in the fact that this endorsement doesn't say it deletes anything or it replaces language. Indemnity, you will hear Indemnity probably talk about that in their counsel, but the reality is it did exactly what it intended to do and it could not have done anything else because the typical Part 2 of lawyers' liability coverage provides coverage for a gross negligence claim for a death. Well, it says this endorsement changes the policy to which it is attached. That's correct. So it's not just like we have to guess. It's saying that. That's correct. And isn't that what endorsements do a lot of the time? I mean, I've read a lot of these insurance policies and they're like 70 pages long and there's this shifting to that and whatever, whatever. So it's not always easy to figure out, but this one does say it changes the policy. That's precisely correct, Your Honor. I think the district court got a little confused because they were directed by Indemnity and found that other places in the policy it says that, you know, Section 2 is deleted in its entirety and replaced by this, where this says changes the policy. But here's why this provision couldn't say those things that the district court wanted it to say. Because you still want all of the Part 2 coverage for direct employees of Bechtel. Does that make sense? In other words, the typical Part 2 provides protection for Bechtel's direct employees for their injury. And if there is a wrongful death or there's a death claim for gross negligence, Part 2 kicks in. If you replace Part 2, the language would say no longer applies to direct employment, but instead it applies to subcontractors, you've eliminated half the coverage that it's intended to provide. So as Justice Haynes correctly pointed out, this does precisely what it – the only thing it could do is that it adds to, it's adding coverage to the policy. Well, it's changing the policy to provide this particular coverage in this particular situation. That's what it's saying. Which, like I said, that's what endorsements do. I mean, I don't really understand the notion of endorsement is meaningless because then why have it? That's precisely right. And when there is any disagreement between the endorsement and the original policy, you go with the endorsement because that's added. That is correct, and the endorsement modifies the policy to the extent there's a difference. And basically what it's doing is adding coverage. And so the question is, what coverage is it adding? It could also not be any more clear about what coverage it is adding. It is adding, and the schedule, it is saying if you're covered, here's the employees that are covered. Here's what an employee is for purposes of this endorsement. And it says specifically, employees of a contractor with whom the named insurer has executed a written contract to provide workers' compensation insurance in connection with the designated premises. It could not be any more clear. It is saying that if you are a general contractor and you provide by contract workers' comp for employees of subcontractors consistent with the Texas Labor Code that allows you to do that, that there is coverage both from a voluntary workers' comp perspective to the extent that the workers' comp of your state doesn't apply, you get the voluntary. But, and here's what's important in this case, it modifies and adds to Part 2 and says you've got coverage as an employer in this circumstance. And it could not be any more clear that an employee for purposes of this endorsement is not directly. Now, I'm well aware of insurance companies suing insurance companies because they try to deal with the underlying issues, get rid of that, not have that sitting around and getting more money out of it. And so then they fight each other over the coverage as opposed to, you know, Bechdel suing Echo or whatever. But your opponent says the result of that is this was voluntary. What is your response to that? It is not voluntary, Your Honor. They rely on Mid-Continent versus Liberty Mutual for that, the Mayhole doctrine. And that was a Texas Supreme Court opinion back in 2007. And there were a lot of insurance companies that immediately took the position that if the insured is not involved, in other words, the insured is Mayhole, then nobody can sue for subrogation. And this court has repeatedly held that that is not the case, that, in fact, this court has said that that Texas Supreme Court case is limited to its facts. This court in AmeriShare Insurance Company versus Navigators, the 611 Fed Third 299 at 308 back in 2010, it cited to the Texas Supreme Court and hardware dealers and said that dueling co-insurers was placing interests of the insureds before their own. And then this court has looked at that specific Mid-Continent situation. And this court in Colony Insurance versus Beach Street Construction, 647 Fed Third 248, it was a 2011 opinion, so it's after the Mid-Continent case. It held that Mid-Continent only applies when three things are present. You have two primary insurers, which you have here. You have the second, and that's the problem here, is the carriers do not dispute coverage. Here, it is unquestionable that my client, Gemini Insurance Company, did what was in the best interest of the insured. It provided coverage, it defended, and then under reservation of rights, it settled the case. And Gemini Insurance Company denied coverage and refused to participate. So based on this court's holding in Colony Insurance versus Beach Street, the Mid-Continent exception doesn't apply. So the policy, to further answer your question, the policy specifically has a subrogation right. The Gemini policy provides it has a right, which triggers contractual subrogation. And this court has said that as well. It also, in its settlement agreement, it reserved its right to subrogate against indemnity. This court has held that in both of those situations, there is a preserved right of contractual subrogation. Both of those things are present here, even though either one of them standing alone would be sufficient. And so you clearly have a right of subrogation when you get to, and the court will have to decide whether it chooses to address whether or not Gemini has the right to subrogation because the district court didn't reach that issue. Because they decided that there was no coverage under the indemnity policy, it found that it didn't need to reach that. That's on the record at 4168, page 11 of the district court's opinion. I think indemnity also takes the position that this court doesn't need to or should not rule on the subrogation issue because it was not reached. We should remand is what they're saying. They would say if the court finds coverage under the indemnity policy, this court should remand for that subrogation issue to be decided. We address that on appeal because we do believe it's an issue properly before this court, but I certainly understand this court could remand that issue. But the clear issue before this court is that there is absolutely coverage under this endorsement. It's a scheduled employee. It was a scheduled employee. If you go back to the first page in determining whether or not Ms. Espinoza was a scheduled employee, it says they're scheduled or they're covered if the bodily injury sustained by an employee included the group of employees described in the schedule. The group of employees described in the schedule is specifically employees of a subcontractor for whom you are required to provide insurance. And then it says the bodily injury in three, the bodily injury must arise out of and in the course of employment necessary or incidental to work in a state listed in the schedule. It does not say anywhere that has to arise specifically out of their employment or named insured. It is talking generally about, and that's the whole purpose of this endorsement, is to expand what would be a traditional Part 2 that would provide only coverage for direct employees to employees. Now, indemnity has also raised the issue that somehow the contract that required Bechtel to name ECHO employees as provide workers' comp is extrinsic evidence that should not be considered by this court. That is inconsistent with the law. The law is pretty clear that it's a Texas Supreme Court case that found that where a contract, where an insurance contract specifically references an underlying contract, you look at that, that that is not, it is an eight-quarters issue at that point. Here, the indemnity policy says specifically where required by written contract. The only place you can go to look and see whether or not that insurance coverage was required by written contract is to look at the subcontract between Bechtel and ECHO, and that is very clear case law. However, and that's the NRA Deepwater Horizon case, 470 Southwest 3rd, 452, it's Texas 2015, and it specifically says when the insurance policy references the contract, you go look at the contract to see what the requirement is. That's what you have to do here. However, even if this were to be extrinsic evidence, it would be admissible extrinsic evidence under the Monroe Guarantee versus Bitco case, 640 Southwest 3rd, 195, it's Texas 2022, where the Texas Supreme Court recognized an exception to the eight-quarters doctrine where you're filling in gaps in aid pleading, and it doesn't contradict the pleading. It goes only to an issue of coverage, and it conclusively establishes that coverage issue. That's exactly what we have here, but this court doesn't even need to reach that issue because this was not extrinsic evidence. It's part of the eight-quarters because it was specifically referenced by the indemnity policy. There is another issue that is raised by indemnity that somehow Gemini is precluded in this court from pointing out the district court's error on Texas law about workers' comp coverage. Texas law is that in a borrowed servant situation that a traditional Part 2 or employer's liability policy covers that situation. Now you have control over that employee for a limited period of time. Therefore, that person is an employee under Texas law. That is, again, clear under Texas law. So the district court said, well, maybe this B-cell endorsement would apply in a borrowed servant because then you do have a subcontractor's employee who's injured, you have the duty that fits the B-cell, but you also have the direct employment requirements in the main part of Part 2. And so the court said that could be a circumstance. When Gemini learned of that opinion for the first time on appeal, it says the district court was incorrect in relying on incorrect Texas law. You don't need a B-cell endorsement to provide coverage for borrowed employees. Indemnity has said that somehow we're precluded because we couldn't have anticipated the district court's misreading of Texas law prior to receiving the opinion of the district court that misunderstood Texas law. And so it could not be more clear that this specific endorsement was intended for this specific situation. And it's important to note that the district court found that as to whether or not this was a scheduled employee that found it assumed without deciding, as you can see at the footnote, that that was the case. And the reality is it clearly applies. Gemini did the correct thing. It defended the insurer. It settled the case under a reservation of rights, and now it has done what Texas courts have said and this court has said is the appropriate thing. It looked out for its insurer, and now it seeks for the correct party, the party that has coverage and primary coverage for this, to reimburse through its subrogation rights in the case. And for those reasons, we ask this court to reverse the district court's opinion and send this back to further proceedings with their main coverage under the indemnity clause. If there are no questions, I'll give back my eight seconds. Thank you. May it please the court. Your Honor, my name is Alan Quindon. I'm the attorney present at the Insurance Company of North America. We've heard a discussion here where Gemini referred to the immediate indemnity policy, and I'll tell you straight up, I'll call it the IINA policy because that's a great thing that has happened in this company. We're talking about the same thing, and the IINA policy is an employer's liability policy. That's a policy like general liability policies, like auto policies, like professional liability policies that is part of the framework of coverage that has developed over the decades in a way that insurers can protect the risk that they're covering. Employer's liability policies, as the name implies, covers injuries arising from the course and scope of employment when those injuries are to the insured's employees. Okay, well, you were smiling as I mentioned that endorsements change things, and we've seen a lot of them in insurance cases. So please explain what you understand the sentence this endorsement changes the policy means. Your Honor, I was smiling, and it's because you were exactly right. Endorsements change policies. That's exactly what they do. Okay, and so how does this one change it in a way that you still win? And as a threshold issue, you're 100% correct. Every endorsement changes the policy. That's why we have endorsements. There's a dispute between the endorsement and the regular policy. We've got to go with the endorsement, right? Because the whole point of the endorsement is to change the policy. Your Honor, that's exactly right. If there's a dispute between an endorsement and a policy that cannot be reconciled, the endorsement prevails. That's a canon of insurance construction. Okay, so tell me your best reconciliation that keeps you in the appellee bucket. Absolutely, my best reconciliation is the reconciliation that the district court applied. So the district court applied that canon of construction. About the borrowed employees? Yes, the district court said you cannot, and it's true here, you cannot say an endorsement cancels or changes terms of a policy if you can read the endorsement and the policy as a whole in harmony. And that's exactly what the district court did. But I don't really understand why that's necessary. I mean, it's one thing for the policy to have Section 1 and Section 2, and they're hard to explain, and you're trying to find a way to put them together. But when you have an endorsement, the fact that it may change something is not something we all have to hide under the bed about, right? I mean, that's how it goes. I mean, that's why reading the whole 70 pages that you're given of this policy is important. I mean, I've been in that world a long time ago, so I know about that. Absolutely. Reading the whole 70 pages that were given in the policy is important. That's what the district court did. Reading the whole endorsement is important. And that's not something in the opening argument here that was done. If we look at the voluntary comp endorsement and say how does it change the policy, we can figure it out just by reading that whole endorsement instead of a little selective excerpt. That endorsement starts off. It adds voluntary compensation insurance to the policy. Subsection A, then, describes the voluntary. And if your honors are having a hard time finding this, it is in Appellants, tab 5, page 2. Subsection A there talks about the requirement of employment and how voluntary comp insurance is added to the policy. We've got right in there. It must arise out of the course and scope of employment. If we go through B, C, D, and E, we see the bounds of voluntary compensation described. They are talking, and there's testimony in the record that reflects this, about an endorsement that adds the opportunity to provide the contractual equivalent of workers' compensation insurance when you have workers who aren't covered under the workers' compensation. It's clear enough from the face of the policy, and there's also testimony in the record, that's what this endorsement does. If we go to subsection F, which is the part here that's at issue, and it's the part here that was just partially read, so Gemini says part 2 applies to bodily injury covered by the endorsement, and then they stop. But it says as though the state of employment shown in the schedule, which is shown in item 3A, that's language that doesn't say part 2 applies. Blanketly, it says part 2 applies. Go look at part 2. It references and incorporates part 2. Now, there's other endorsements in the policy that do the same thing. Part 2 applies as if, and then references adding states to 3A. Those endorsements are adding coverage territory. And there are endorsements in the policy that say, this language replaces a provision of part 2. Forget what part 2 says. Here's the new language. And the endorsements use replace when that's the case, and that was important to the district court decision, and it's important here. This subsection F references and incorporates part 2. Part 2 requires an employee in the course and scope of employment, and that's the very essence of employer's liability coverage. So what does it add? What does this endorsement add? The endorsement only ever adds the opportunity to offer voluntary compensation to workers who are not covered by the act. In this case, it offers the opportunity to offer voluntary compensation to workers of a subcontractor that meets the requirements of that schedule. But it references part 2, and referencing part 2 incorporates part 2's scope of employment requirement. So it adds the opportunity to offer that voluntary compensation coverage if you find yourself in the situation where you've borrowed that employee. So we've been dancing around this for decades in Texas. Employers try to get covered. You know, they want to provide insurance every way they can so that the compensation bar applies. And that looks like what they were trying to achieve here, that, you know, you get in a fight over, was it a borrowed servant? Was it Echo's employee? Was it Bechtel's employee? Was it Exxon's employee? They wanted to cover every base they could. It seems to me that's what they were intending to do. Well, when you say it seems that's what they were intending to do, it's another issue, and I think it's an important issue, and I think it's an issue that we've sort of just a partial and therefore misleading picture has been painted. And so we've heard sort of let me reference the record and the contract. So this is a big part of Jim Nye's argument, but you have to go back to the contract. We can talk about Monroe Guarantee and whether that disposes of a coverage issue. But go back to the contract. Let's go back to the contract and look at it. Because if we do that, if we go back and look at the whole contract and not just this selectively quoted Bechtel and Echo mean for this OSIP program to cover everything and all things, okay? And no one's explained to me, just as an aside, how Exxon as a project sponsor with a large deductible, very large deductible, gets its rights bargained away by Echo and Bechtel reaching agreements about what the OSIP covers, okay? But let's say they can do that. Let's just imagine for the sake of argument that they can determine that the Exxon-sponsored policy covers whatever they want. If we just go and read the language, just the language in the four paragraphs of the section that Jim Nye reads to us, well, we see there that they're talking about workers' compensation coverage. We can see there that they're talking about section 406.123 and even subsection E, which is a part of the OSIP statute that says it applies only for the purposes of the Workers' Compensation Act. We can see even that they've quoted the only for the purposes of the Workers' Compensation Act. If we just look at that tiny section of the agreement, Bechtel and Echo, if they had the ability to bargain away Exxon's rights, didn't reach the conclusion that this was going to cover general liabilities, which is Jim Nye's thesis. If you go farther and say, is there a meaningful obligation in this indemnity provision that requires Bechtel? Because this says Exxon is providing insurance, not Bechtel to Echo. So we go down and we see subsection 4 where they try to give effect to the sort of obligation of Bechtel to provide alternative workers' compensation. But that contains a confusing reference. It says Bechtel not will provide workers' compensation, but will provide alternative coverage and then references subsections that don't appear in the contract. If we go through a goose chase in the contract to see what that means, what that reference means, you don't have to go very far. You can go right down to the bottom of that page and see that they agreed that Echo would provide general liability insurance in favor of Bechtel, which is exactly why Jim Nye picked up the defense of Bechtel in this case. Everybody knew this was a general liability case. Bechtel and Echo didn't do anything to suggest that they believed this was their agreement that employers' liability would now cover non-employers' liability. On the contrary, Bechtel sought coverage and received coverage from Jim Nye under their general liability policy. And even more, and it's not in the excerpts, but record on appeal 2484, I'm sorry, 2464, contains an indemnity provision that says some contractor, that's Echo, agrees to defend, indemnify, and hold owner group and contractor group harmless, contractor group being Bechtel, from any claims, demands, causes of action of every type or character by any third party, including subcontractor Echo's employees. They knew whose employees were whose, and they were adopting the notion that indemnity would run from Echo to Bechtel, which is why Jim Nye picked up Bechtel's defense. I don't, it's a, we're in a situation here where Jim Nye is saying, let's split hairs about what that contractual provision, but only read the part that says it will cover everything, and don't read the rest of it. I don't think you can read anything around that provision in the contract, or the whole contract, and come up with the conclusion that they intended employer's liability coverage to cover injuries of non-employees. I've not seen it. I've never seen an employer's liability policy that covers the injuries of non-employees. Part two doesn't allow it. The endorsement explicitly references part two. I, to me, it doesn't go past that. This is the, this is sort of the thrust of Jim Nye's argument today, but it also shouldn't escape the court. But Jim Nye has this other argument that was a big part of the summary judgment and has slipped through into the appellate briefing, and that's an argument that is consistent with your honors notions of like trying to determine how far OSIPs expand. But it's this belief that if you are a statutory employer in an OSIP, all of those employees become your employees under an employer's liability policy. I think the reason you're not seeing that as the thrust of their argument today is because the answer, the Texas Supreme Court's answer to the certified question in Maxim Crane seems to have disposed of that possibility just absolutely and completely. So we've got an OSIP statute in Texas that says here's how you establish an OSIP. It's 406.123, subsection E is the important one, but the whole statute is how you determine what an OSIP is. Subsection E says if you're a participant in an OSIP, you meet all the requirements, you become the statutory employer, not statutory employee, doesn't use that term, only for the purposes of the Texas Workers' Compensation Act. This court certified a question to the Texas Supreme Court to ask them to interpret whether you can just import the employee status in 406.123 into other, in this case, in Maxim Crane, it was a statute. So we've got a statute that did not define the word employee. The Texas Supreme Court took the certified question, said if a statute doesn't define the word employee, we have to use the ordinary meaning. It was one that is based on the ability to direct and control that employee, okay, just like St. Joseph's versus Wolfe, just like the analysis that the district court went through. Who's your employee depends on who you direct and control. And then they looked at the statute, the OSIP statute, and they said it's important that the OSIP statute says it's only for the purposes of the workers' compensation law. Because when you're suing, when you're suing for wrongful death, that's not a suit under the workers' compensation law. Rentex Steel essentially tells us this. And so in Maxim Crane, they said interpreting this statute where the employee, the word employee is not defined, we must give it the ordinary meaning, and that's not consistent with the meaning of what a statutory employee is under the act. We have a policy where the word employee is not defined. Now, Gemini is going to run around and say they've done it. They've done it repeatedly. Look at the v-cell endorsement. The v-cell endorsement defines employees but doesn't define employee. If we really look at the v-cell endorsement, it defines a group of workers, a group of employees. It defines a group but doesn't define employee for the whole policy. If it defined employee for the policy, the policy doesn't make sense. All of a sudden, it doesn't cover your employees. Now, there's some discussion here about Gemini's right to subrogate, and I agree that it's not a question that has been addressed by the district court, but it is a question that needs to be addressed by the district court. Gemini asserts a right to contractually subrogate. Gemini's got a policy. So, if we reverse on the construction of this v-cell, then you think we should remand on the subrogation for first? Well, obviously, I don't think that we should reverse at all. I'm well aware, but I said if. It is a hypothetical question. I think it's probably necessary. Then should we remand? Correct, Your Honor. You have to answer our questions whether you like them or not. And Gemini noted in their brief and in their argument that these are things that haven't been considered. Yes, but we can decide legal questions up here. So, that's why I'm asking. Your position is that we should remand it if we get there. You can decide legal questions. The sort of odd bifurcated procedural posture of this case put off consideration of Gemini's policy terms. So, Gemini's policy has, for example, a wrap-up exclusion. There's a question whether Gemini's policy had coverage at all. It's possibly a question that explains why we're here today. But that's something that would have to be, I think,  Did Gemini's policy ever have coverage? And it's a question that's material to the issue of voluntary payments. We didn't exclusively rely on MnCOTN. We relied on Foremost and CAC and TIG specialty in our brief. For the proposition that a voluntary payment is a voluntary payment if there's no coverage under the policy that makes that payment, that's not an issue of encouraging someone to pick up the defense. You don't want someone to pick up the defense if their policy is a stranger to the act. Whether Gemini's policy had coverage... Yeah, but insurers are not usually very voluntary. Well, I mean, it's... I'm not saying it can't be, I'm just saying... You're right, but there's a reason that there's a voluntary payment doctrine. Yeah. Because voluntary payments have been made. And there's a... It needs to be considered by the district court... I'm well aware. ...was a voluntary payment made here. So, for these reasons, I think that it's clear from Maxim Crane that the general proposition that was sort of the original thrust of this argument doesn't make any sense. You're not... Workers in an OSIP can't all be employees covered by an employer's liability policy. I think a complete reading of the VSAIL endorsement, which includes exactly as the district court did, reconciling subsection F of the VSAIL endorsement with part 2 that it explicitly references with all of the other endorsements in the policy that consistently use the language applies as though to expand coverage territory and use the language replace to replace triggering coverage terms. I think that it makes it clear if you read the entire VSAIL endorsement that just sticking within the terms of the policy, there's not an argument that the VSAIL endorsement changes employers' liability coverage magically now into something that doesn't require employment. That's what the district court found, and we ask your honors to affirm the district court's decision. A few quick points on rebuttal. They sat to the Maxim Crane case for somehow altering insurance policies. The Maxim Crane case was a Texas Supreme Court case looking at statutory construction between two different statutes, the Texas Labor Code and the Texas Anti-Indemnity Act. And the Texas Anti-Indemnity Act did not define employee, and the Texas Labor Code defines employee to include a statutory employee. The Texas Supreme Court only found that in the context of two competing statutes, you can't take the definition from one statute and apply it to another. It did not look at an insurance policy, and it certainly didn't hold that you can rewrite an insurance policy based on the Maxim Crane case, which is what indemnity is trying to do. Maxim Crane does not dispose of this case. It found in the... that there was an undefined term of employee in the Texas Anti-Indemnity Act. Here, we have an insurance policy that absolutely and clearly defines what an employee is for purposes of endorsement. Employees of a contractor with whom the name insured has executed a written contract to provide workers' compensation insurance in connection with the designated primacy. That's under employee, and then it says, here's what employee is. Could not be any more clear. I find it interesting that Indemnity's counsel spent about a third of their argument talking about the underlying contract and how if you look over here and you look over there, all of their briefing says this court can't look at it, and suddenly today, because they recognize the key language, they are now trying to go back and argue some ambiguity in the underlying contract after briefing to this court that this court's not even allowed to look at that contract. But in looking at the contract, the contract is also very clear. It didn't just intend to provide workers' compensation coverage. If you look at the key parts of the OSIP, it says in paragraph 1 on 2781, owner has in effect an owner's insurance program in OSIP which provides workers' compensation and employers' liability, and that's exactly what we're talking about today. And then it says it is primary coverage. The OSIP is intended to be primary for not just injury but death. Death of employees leads to Part 2 coming into play. And so then we look at what it covers, and it could not be, you know, any more clear that the VSAIL endorsement covers this precise situation. I also find it interesting that indemnity's counsel says that everybody knew this was a GL case. This wasn't a workers' comp case. But then at the end of their argument, they start arguing that my GL carrier that I represent didn't have any coverage. How can it be both a GL case and my client not have coverage because of an OSIP? My client potentially did not have coverage because of the OSIP endorsement, but the OSIP, they denied coverage. What was my client supposed to do? It did exactly what insurance companies are told by this court to do, to look out for the best interest of its insured and then subrogate against the party that should have paid. And so we ask this court to reverse and remand from further proceedings. Thank you. That will conclude the arguments before this panel for this week. The cases are under submission.